| | | |
|---|---|---|
| STEPHEN W. HENLEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos. 1:14-CV-328-CLC |
| | ) | 1:12-CR-149-CLC-SKL-1 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

Before the Court is Petitioner's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 37], basing his initial request for relief on counsel's failure to raise *Descamps v. United States*, 133 S. Ct. 2276 (2013), during either the sentencing or appellate proceedings [*Id.*]. The United States responded in opposition [Doc. 39], and Petitioner replied in turn [Doc. 40]. During pendency of his initial motion, Petitioner filed what the Court interpreted as a motion for leave to amend on January 25, 2016 [Doc. 41], raising *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA") was unconstitutionally vague, as a novel basis for collateral relief [*Id.*]. The United States filed an amended response in opposition on February 26, 2016 [Doc. 43]. For the reasons discussed below, Petitioner's motion for leave to amend [Doc. 41] will be **DENIED** based on futility and his un-amended § 2255 petition [Doc. 37] will be **DISMISSED WITH PREJUDICE** for failure to establish an entitlement to relief.

I.  BACKGROUND

On May 28, 2012, Petitioner attempted to rob a convenience store with what appeared to be a sawed-off shotgun, but was actually a BB gun wrapped in duct tape [Doc. 35]. He

subsequently pled guilty to attempted robbery, in violation of 18 U.S.C. § 1951 [*Id.*], resulting in a statutory penalty range of up to twenty years' imprisonment for the offense [Presentence Investigation Report ("PSR") ¶ 62]. The United States Probation Office deemed Petitioner to be a career offender under Section 4B1.1 of the United States Sentencing Guidelines [*Id.* ¶ 15], based on prior Tennessee convictions for robbery and evading arrest [*Id.* ¶¶ 38, 39], thereby subjecting Petitioner to an advisory Guideline range of 151 to 188 months' imprisonment [*Id.* ¶ 63]. This Court sentenced Petitioner to a middle-of-the-range 170-month term of incarceration on June 20, 2013 [Doc. 30]; the Sixth Circuit affirmed the conviction on June 3, 2014 [Doc. 35].

Petitioner submitted the original § 2255 motion on November 17, 2014, suggesting counsel rendered constitutionally deficient assistance by failing to challenge his categorization as an armed career criminal based on *Descamps* [Doc. 37 p. 4 (mistakenly suggesting Petitioner was classified as an armed career criminal when, in fact, he was subjected to the career offender enhancement contained in Section 4B1.1 of the Guidelines)]. More than a year later, on January 25, 2016, Petitioner filed what the Court interpreted as a motion for leave to amend [Doc. 41], attempting to extend the Supreme Court's reasoning in *Johnson* to invalidate the parallel residual clause found in Section 4B1.2(a) of the Sentencing Guidelines [*Id.* (arguing *Johnson*'s invalidation of the ACCA residual clause should apply equally to Section 4B1.2(a)'s residual clause and, without that provision, he can no longer be classified as a career offender)].[1]

---

[1] The ACCA mandates a 15-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to

2

## II.     TIMELINESS OF PETITION AND REQUEST FOR LEAVE TO AMEND

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the one-year statute of limitations applicable to collateral challenges under § 2255 runs from the latest of: (1) "the date on which the judgment of conviction becomes final;" (2) "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;" (3) "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;" or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2255(f).  Amended claims and defenses are subject to the same limitations period as the original motion, *Cameron v. United States*, No. 1:05-CV-264, 2012 U.S. Dist. LEXIS 48381, at *3–6 (E.D. Tenn. April 5, 2012) (citing *Olsen v. United States*, 27 F.

---

another" (the "residual clause").  18 U.S.C. § 924(e)(2)(B).  It was this third clause—the residual clause—that the Supreme Court deemed unconstitutional in *Johnson*.  135 S. Ct. at 2563.

Section 4B1.1 enhances a defendant's offense level if he or she qualifies as a "career offender," i.e., adult defendant whose offense of conviction is a "crime of violence or controlled substance offense" and who has "at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S. Sentencing Manual §4B1.1(a).  "Crime of violence" under the Guidelines is defined in an almost identical manner as "violent felony" under the ACCA. *See* U.S. Sentencing Manual §4B1.2(a) (adopting identical use-of-force and residual clauses as well as a nearly identical enumerated-offense clause).

The Supreme Court's reasoning in *Johnson* is unlikely to extend to the Guidelines context.  *See United States v. Smith*, 73 F.3d 1414, 1417–18 (6th Cir. 1996) ("[T]he Sentencing Guidelines are not subject to a vagueness challenge."); *see also United States v. Matchett*, 802 F.3d 1185, 1196 (11th Cir. 2015) ("No circuit has held in a published opinion that advisory guidelines can be unconstitutionally vague.").  The Court need not resolve the issue here, however, because the Supreme Court has not made *Johnson*'s holding retroactively applicable in the context of a challenge to the residual clause of Section 4B1.2(a).

3

App'x 566 (6th Cir. Dec. 14, 2001)).  Petitioner's one-year period for requesting relief under subsection (f)(1) expired on September 1, 2015, one year after his conviction became final for purposes of that section on September 1, 2014.  S*ee Clay v. United States*, 537 U.S. 522, 525 (2003) (explaining that a conviction affirmed on appeal becomes final when the period for requesting a writ of certiorari expires, running from the date on which the court of appeals issues its decision); Sup. Ct. R. 13 (providing ninety-day period for requesting a writ of certiorari, running from the date on which the court of appeals issues its decision).  The original petition— filed on November 17, 2014—falls safely within the permissible period for requesting collateral relief.

By contrast, Petitioner failed to request leave to amend until nearly a year after expiration of the window for requesting timely relief under § 2255(f)(1).  While it is true that Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should "be freely given when justice so requires," Fed. R. Civ. P. 15(a), relevant factors include "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Anderson v. Young Touchstone Co.*, 735 F. Supp. 2d 831, 833 (W.D. Tenn. 2010) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1965)).  Because futility of the proposed amendment is a permissible basis on which to deny a motion for leave to amend, *see Forman*, 371 U.S. at 182 (noting grant or denial of a motion to amend is within the discretion of the district court), resolution of Petitioner's motion [Doc. 41] depends on whether the proposed claims equitably tolled the limitations period contained in § 2255(f)(1), are independently timely under §§ 2255(f)(2), (3) or (4), or otherwise relate back to a timely filing under Rule 15(c).

4

Noticeably absent from Petitioner's motion is any ground which might be construed to toll § 2255(f)(1), any allegation that an illegal action by the Government affected his ability to file for collateral relief under § 2255(f)(2), or any allegation of facts affecting his case that could not have previously been discovered through the exercise of due diligence under § 2255(f)(4). Nor does Petitioner's amended claim relate back to the ineffective assistance grounds raised in his original petition. *See* Fed. R. Civ. P. 15(c)(2) (explaining that a claim relates back if it "ar[i]se[s] out of the [same] conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading"). As such, viability of the amendment hinges on whether the basis for relief contained therein triggers subsection (f)(3)'s renewed window for requesting relief. In other words, timeliness of Petitioner's § 2255 motion depends on whether (1) the Supreme Court decision on which he relies amounted to recognition of a new right and (2) that right has been made retroactively applicable to cases on collateral review. The Court finds it need not address the first prong—whether *Johnson*'s holding extends to Section 4B1.2 of the Guidelines, thereby giving rise to a new right—because Petitioner has failed to establish that the proposed rule has been "made" retroactively applicable to cases on collateral review.

The United States Supreme Court explained in *Tyler v. Cain* that under 28 U.S.C. § 2244(b)(2)(A)—the state-prisoner corollary of § 2255(h)(2)—"'made' means 'held'" and, thus, a new rule or right is only "made" retroactive when the Supreme Court itself holds "that the new rule is retroactively applicable to cases on collateral review." 533 U.S. 656, 662 (2001). In her concurring opinion in *Tyler*, Justice O'Conner recognized that there were two ways in which the Court can make a rule retroactive: (1) by expressly stating that the new rule has such effect; or (2) "through multiple holdings that logically dictate the [same conclusion]." *Tyler*, 533 U.S. at

5

668 (O'Conner, J., concurring).[2] In an attempt to illustrate the second scenario, she explains a holding in "Case One that a particular type of rule applies retroactively" combined with a second holding in "Case Two that a given rule is of that particular type" necessarily means that the rule so referenced applies retroactively because the Court has "'made' the given rule retroactive" through existing case law "'dictat[ing]' th[at] conclusion." *See id.* at 668–69 (noting the Court only makes "a rule retroactive . . . where [its] holdings logically permit no other conclusion than that the rule is retroactive.").

In *Schriro v. Summerlin*, 542 U.S. 348 (2004), the Supreme Court summarized the various ways in which new rules affect cases, explaining that newly announced rules only apply retroactively in limited situations. *Id.* at 351–52.

New substantive rules generally apply retroactively. *Id.* There are two types of new substantive rules: (1) decisions that narrow the scope of a criminal statute by interpreting its terms, *see Bousley*, 523 U.S. at 620–21 (finding narrower interpretation of 18 U.S.C. § 924(c)(1)'s "use" prong amounted to new substantive rule retroactively applicable on collateral review because holding that a criminal statute does not reach certain conduct necessarily places previously convicted defendants at risk of being punished for "an act that the law does not make criminal"), and (2) constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish, *Teague v. Lane*, 489 U.S. 288, 311 (1989); *see also Schriro*, 542 U.S. at 352–53 (articulating the above categories of new substantive rules); *Jones*, 689 F.3d at 624 (same). Examples of the latter category include rules that place a class of

---

[2] While Justice Thomas delivered the opinion of the Court, Justice O'Conner's concurrence represents the narrowest ground of agreement by a majority of the Justices, and thus, "the holding of the Court." *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)).

6

private conduct beyond the power of the state to proscribe, *see, e.g.*, *Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (holding Fourteenth Amendment forbids states from making illegal private, homosexual sodomy between consenting adults); *Texas v. Johnson*, 491 U.S. 397, 414 (1989) (holding the First Amendment forbids states from punishing an individual for burning the American flag in protest), and rules that prohibit a certain category of punishment for a class of defendants because of their status or offense, *see, e.g.*, *Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (holding the Eighth Amendment forbids states from "tak[ing] the life of a mentally retarded offender"). All three forms of substantive rules—the first category recognized in *Bousley* and both subcategories recognized in *Teague*—"apply retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of "an act that the law does not make criminal"' or faces a punishment that the law cannot impose upon him." *Schriro*, 542 U.S. at 352 (quoting *Bousley*, 523 U.S. at 620).

By contrast, new procedural rules generally do not apply retroactively. *Schriro*, 542 U.S. at 353. Procedural rules are defined as those rules that "regulate only the manner of determining the defendant's culpability." *Id.* at 351 (emphasis omitted). Unlike substantive rules, which produce a class of persons subject to punishment the law does not condone, procedural rules "merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id.* at 352. "Because of this more speculative connection to innocence, [the Supreme Court has given] retroactive effect to only a small set of 'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990)). "The only example of such a watershed rule ever [recognized] . . . is the right to counsel, as set forth in *Gideon*." *Fulcher v. Motley*, 444 F.3d 791, 815 (6th Cir. 2006).

7

The Sixth Circuit has confirmed that the Supreme Court's holding in *Johnson* sets forth a new substantive rule to the extent that it narrows the scope of the ACCA because it "prohibits the imposition of [§ 924(e)'s 15-year statutory minimum] on those defendants whose status as armed career criminals is dependent on offenses that fall within the residual clause." *In Re Watkins*, 810 F.3d 375, 383 (6th Cir. 2015). In other words, "*Johnson* 'narrowed the class of people who are eligible for' an increased sentence under the Armed Career Criminal Act." *In re Rivero*, 797 F.3d 986, 989 (11th Cir. 2015) (quoting *Bryant v. Warden FCC Coleman-Medium*, 738 F.3d 1253, 1278 (11th Cir. 2013)). The same cannot be said about *Johnson*'s proposed impact on the class of people who are eligible for an enhanced sentence under the Guidelines.

Unlike the ACCA—a statute that shifts the defendant's penalty range and minimum and maximum terms of imprisonment—the Guidelines merely guide the execution of a court's discretion in selecting the appropriate sentence from within an otherwise fixed range of lawful penalties. *See Mistretta v. United States*, 488 U.S. 361, 396 (1989) (noting that the Guidelines do not usurp "the legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by Congress"). Any change in a defendant's Guideline range based on *Johnson* would thus work a change in the procedure by which his or her sentence is selected, but it would not change the permissible range of punishments. For example, a defendant who violates 18 U.S.C. § 1951(a) is subject to a lawful penalty range of not more than twenty years. *See* 18 U.S.C. § 1951(a). Alterations to that defendant's total offense level—whether by way of leadership enhancement, reduction for acceptance of responsibility, or career offender designation—merely shift his or her advisory range—the procedure used to identify the most appropriate sentence from within a larger range of lawful consequences—without altering the range of penalties condoned by § 1951(a) or

8

individuals subject to those penalties. As such, the proposed rule cannot be said to narrow the scope of a penal statute or place particular persons beyond the state's power to punish. *Cf. Humphress v. United States*, 398 F.3d 855, 862 (6th Cir. 2005) (finding rule announced in *Booker v. United States*, 543 U.S. 220 (2005)—that Guidelines are merely advisory and not mandatory—is a non-watershed, procedural rule); *Goode v. United States*, 305 F.3d 378, 385 (6th Cir. 2002) (finding rule announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000)—that facts which increase a statutory penalty range must be found by a jury beyond a reasonable doubt—is a non-watershed, procedural rule).

Moreover, the new procedural rule that would result from extending *Johnson*'s holding to the Guidelines would not be "watershed" because erroneously calculating a defendant's advisory Guidelines range does not render the resulting sentence unfair or unreliable in the way that complete deprivation of the right to counsel does for a trial. *Cf. United States v. Cronic*, 466 U.S. 648, 659 (1984) (complete denial of counsel at a critical stage renders the trial "unfair," and the "adversary process itself presumptively unreliable"). Nor does the proposed rule alter the bedrock procedural elements essential to the fairness of a sentencing proceeding. *See Panetti v. Stephens*, 727 F.3d 398, 414 (5th Cir. 2013) (explaining rules derived from the application of pre-existing legal principles in a new context do not "effect a sea change in criminal procedure").

In sum, while *Johnson* effected a substantive change in the law by altering the range of lawful sentences under the ACCA, extension of that same decision to the Guidelines would effect only a procedural change in the sentencing process. Because the Supreme Court has not made non-watershed procedural rules retroactively applicable on collateral review, Petitioner cannot rely on the renewed one-year limitations period under § 2255(f)(3). *See, e.g.*, *In re Rivero*, 797 F.3d at 989 (assuming *Johnson* applies to the residual clause of Section 4B1.2(a)(2)

and concluding that "no combination of holdings of the Supreme Court 'necessarily dictate'" that the resulting rule should be applied retroactively on collateral review); *In re Gieswein*, 802 F.3d 1143, 1147–48 (10th Cir. 2015) (same). Petitioner's failure to demonstrate that the asserted ground equitably tolled § 2255(f)(1), relates back to a timely pleading, or triggered one of the alternative statutory periods found in §§ 2255(f)(2), (3), and (4) leads the Court to conclude that the *Johnson*-based amendment is untimely. Because granting Petitioner leave to make the proposed amendment would be futile under Rule 15(a), his motion [Doc. 41] will be **DENIED**.

## IV.   ANALYSIS OF TIMELY CLAIMS FOR COLLATERAL RELIEF

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

The un-amended petition articulates two theories in support of a single timely ground for collateral relief: ineffective assistance of counsel [Doc. 37]. Specifically, Petitioner argues that counsel rendered ineffective assistance during both the sentencing and appellate process by failing to challenge application of the career offender enhancement based on *Descamps* [Doc. 37 (noting *Descamps* outlined the modified categorical approach used to determine whether conviction under a divisible penal statute constitutes a predicate violent felony under the ACCA's enumerated-offense, use-of-physical-force, or residual clauses)].

10

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel's assistance is presumed to have been effective, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Because Petitioner has failed to demonstrate that counsel deviated from professional norms by declining to make the proposed objection, the Court finds that it need not address whether that failure resulted in prejudice.

The Supreme Court clarified in *Descamps* how sentencing courts should identify a defendant's offense when the prior conviction involved the violation of a "divisible" statute—one which "comprises multiple, alternative versions of the same crime." 133 S. Ct. at 2284. Specifically, the Court explained that the sentencing court should employ a "modified categorical approach" and "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior

11

conviction." *Id.* at 2281. The decision made clear that "the job . . . of the modified approach [was only] to identify, from among several alternatives, the crime of conviction so that the court can" determine whether that variant of the offense qualified as a violent felony under the ACCA's definition of violent felony. *Id.* at 2285.

Counsel's failure to challenge Petitioner's career offender designation based on the process outlined in *Descamps* cannot be characterized as a deviation from professional norms since prevailing Sixth Circuit case law at the time of sentencing and direct appeal clearly held that Petitioner's predicate offenses—Tennessee robbery and Tennessee evading arrest [PSR ¶¶ 38, 39]—categorically qualified as crimes of violence under Section 4B1.2(a). *See United States v. Mitchell*, 743 F.3d 1054, 1060–63 (6th Cir. 2014) (holding that robbery under Tennessee law was categorically a violent felony); *United States v. Freeman*, 573 F. App'x 559, 560 (6th Cir. 2014) (*per curium*) (relying on *Mitchell* to hold that robbery under Tennessee law was categorically a crime of violence); *United States v. Doyle*, 678 F.3d 429, 432–37 (6th Cir. 2013) (holding that Tennessee felony evading arrest was categorically a violent felony); *United States v. Barnes*, 525 F. App'x 491, 492 (6th Cir. 2013) (*per curium*) (affirming, post-*Descamps*, that *Doyle* was still good law and that Tennessee felony evading arrest was a violent felony); *United States v. Rogers*, 481 F. App'x 250, 251 (6th Cir. 2013) (holding, post-*Descamps*, that under *Doyle*, Tennessee felony evading arrest was categorically a crime of violence). Counsel cannot be characterized as deficient for failing to raise a meritless objection at sentencing or on appeal, *see, e.g.*, *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (counsel is not constitutionally ineffective for not pursuing a meritless claim), or failing to predict what Petitioner suggests amounted to a change in the definition of crime of violence, *see, e.g.*, *Green v. Johnson*, 116 F.3d 1115, 1125 (5th Cir. 1997) ("[T]here is no general duty on the part of

12

defense counsel to anticipate changes in the law."); *Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir. 1986) (noting that non-egregious "errors such as failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel"). Both theories of ineffective assistance of counsel fail for lack of merit.

## V. CONCLUSION

For the reasons discussed, Petitioner's motion for leave to amend [Doc. 41] will be **DENIED** for futility and his § 2255 motion [Doc. 37] will be **DISMISSED WITH PREJUDICE**. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**